IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

EMPLOYERS MUTUAL CASUALTY COMPANY                                        PLAINTIFF

V.                                                         CIVIL ACTION NO.: 1:16CV4-SA-DAS

BRYTNI WEST, et al.                                                     DEFENDANTS

MEMORANDUM OPINION

Plaintiff filed this Declaratory Judgment Action on January 15, 2016. Plaintiff has since filed two motions for summary judgment. The Court finds as follows:

*Factual and Procedural Background*

This matter arises from twelve separate complaints and twelve separate cross-complaints from twelve separate underlying civil actions filed in the Circuit Court of Oktibbeha County, Mississippi. All but two actions have been compromised or settled in the underlying state court suit. Employers Mutual Casualty Company (EMC) filed two motions for summary judgment. The first motion seeks a declaration as to whether EMC must provide coverage for claims made by Brytni West and Dustin Carley against the insureds, Jason Littrell and Littrell Construction, Inc (Littrell).[1] The second motion for summary judgment seeks a declaration as to whether EMC must provide coverage to Littrell for claims made by D.L. Acton Construction Company ("DLA") in its ancillary cross complaints filed in the underlying actions.[2] DLA has responded to

---

[1] EMC policy numbers 3D6-41-97-08, 3D6-41-97-09, 4D1-69-89-10 and 4X1-69-89-10, with effective dates of coverage from November 1, 2007 through November 1, 2008; November 1, 2008 to January 19, 2009; September 17, 2009 through September 17, 2010; and August 31, 2009 through August 31, 2010 are the subject of this suit.

[2] DLA made direct claims of negligence and breach of warranty and contract, as well as derivative claims for indemnity as to claims made by West and Carley for bodily injury or property damage. After the motions for summary judgment were filed, several parties settled certain claims, including DLA's direct claims against Littrell and DLA's claims for indemnity for "property damages" as defined by the policy. Pursuant to stipulation [139], DLA's claims ancillary to the West Complaint regarding "bodily injury" remain. Additionally, Pursuant to Federal

both motions, arguing that EMC should provide coverage to Littrell as to the underlying Carley and West complaints as well as their own underlying complaint. However, the Defendant insureds, Jason Littrell and Littrell Construction, Inc. have not responded.

The West Complaint and the Carley Complaint both allege that separate Defendants, DLA and Bragan Properties, through their various entities, constructed multifamily dwellings that were "defective, inadequate, and negligent [in] design and construction." These dwellings comprised of three story apartment buildings with outdoor wooden decks on the front and rear of the dwellings. The complaints allege that Littrell, who served as subcontractor for DLA, built the decks with "undeniable knowledge" that college students would be residing in the properties, and that the decks would be natural gathering spots. However, the complaints allege that these decks were attached to the building structure using only nails, "instead of the more common and safer alternative of bolts." Further, West alleges that "the decks were nailed only to press board or [oriented strand board], and not to a solid piece of wood," and that no flashing was installed, which purportedly allowed water to damage what West claims to be the "already structurally weak deck and its attachment to the building." The Carley Complaint alleges that the property owners and managers had actual notice of the unstable nature of the decks.

The West Complaint alleges that the "gradual, but continual weakening finally hit a breaking point on or about November 22, 2014," when the deck collapsed, causing everyone standing on the deck to free-fall before crashing down on the broken deck onto cars parked below. Regarding injuries sustained in the fall, West and Carley made claims against Littrell for negligence, breach of warranty, misrepresentation, fraud, and fraudulent concealment, products liability, and wanton, gross and/or intentional conduct.

---

Rule of Civil Procedure Rule 41(a)(1)(A)(ii), complaints made by Carley against DLA have been settled and dismissed.

DLA's underlying cross-complaint arises out of the same facts that are the subject of the West and Carley lawsuit. DLA makes claims ancillary to the West Complaint for indemnification to the extent that those claims relate to "bodily injury."

*Summary Judgment Standard*

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when the evidence reveals there is no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts demonstrating a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record ... or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact ." FED. R. CIV.P. 56(c)(1). The court is only obligated to consider cited materials but may consider other materials in the record. *Id*. at 56(c)(3). The court must resolve factual controversies in favor of the nonmovant "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When such contradictory facts exist, the court may "not make

3

credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000).

*Analysis and Discussion*

EMC filed their first Motion for Summary Judgment in which they argue that there is no duty to provide coverage, including a duty to defend or indemnify, for those matters alleged in the West and Carley complaints. First, EMC argues that although the West and Carley complaints do allege damages because of "bodily injury" as that term is defined in EMC's Policy, the Policy would not be triggered because the "bodily injury" did not occur within the Policy period. Second, EMC argues that West and Carley do not seek damages because of "property damage" as that term is defined in the Policy. Third, EMC argues that the Complaints do not claim "bodily injury" or "property damage" caused by an "occurrence" as that term is defined. Finally, EMC argues that the Complaints do not make a claim for "personal and advertising injury," as defined under Coverage Part B of the Policy, and they do not make a viable claim under Coverage Part C of the Policy regarding Medical Payments coverage. As EMC's third argument, whether the accident constituted an "occurrence" under the Policy, is dispositive in this matter, EMC's remaining arguments need not be addressed.

EMC has two distinct obligations to its insured—(l) a duty to indemnify its insured for covered claims and (2) a duty to furnish a legal defense to certain claims. *Mimmit v. Allstate County Mut. Ins. Co.*, 928 So. 2d 203, 207 (Miss. Ct. App. 2006). Furthermore, "the burden of proving coverage rests with the insured." *Architex Ass'n, Inc. v. Scottsdale Ins. Co.*, 27 So. 3d 1148, 1157 (Miss. 2010). EMC argues that the Policy does not provide coverage for either obligation.

"Mississippi[3] has adopted the 'allegations of the complaint' rule (sometimes referred to as the eight-corners test) to determine whether an insurer has a duty to defend," pursuant to which the court reviews the allegations in the underlying complaint to see whether it states a claim that is within or arguably within the scope of the coverage provided by the insurance policy. *Ingalls Shipbuilding v. Federal Ins. Co.*, 410 F.3d 214, 225 (5th Cir. 2005). In so doing, the court compares the words of the complaint with the words of the policy, looking "not to the particular legal theories" pursued by the plaintiffs, "but to the allegedly tortious conduct underlying" the suit. *Id.* (citations omitted). *See also United States Fidelity & Guarn. Co. v. Omnibank*, 812 So. 2d 196, 200 (Miss. 2002). "If the complaint states a claim that is within or arguably within the scope of coverage provided by the policy, then the insurer has a duty to defend." *QBE Ins. Corp. v. Brown & Mitchell, Inc.*, 591 F.3d 439, 443 (5th Cir. 2009) (applying Mississippi law) (quotation omitted).

The duty to indemnify, however, arises only if the facts actually established in the underlying suit amount to a covered claim. *Estate of Bradley ex rel. Sample v. Royal Surplus Lines Ins.*, 647 F.3d 524, 531 (5th Cir. 2011) (applying Mississippi law). An insurer may have a duty to defend but, eventually, no duty to indemnify. *Moeller v. American Guar. and Liability Ins. Co.*, 707 So. 2d 1062, 1069 (Miss. 1996). In contrast, "if there is no duty to defend, there can be no duty to indemnify." *Evanston Ins. Co. v. Neshoba Cnty. Fair Ass'n, Inc.*, 442 F. Supp. 2d 344, 345 n.1 (S.D. Miss. 2006).

---

[3] The Declaratory Judgment Act does not extend the subject matter jurisdiction of the court beyond the limits delineated in Article III of the United States Constitution. *Skelly Oil Company v. Phillips Petroleum Company,* 339 U.S. 667, 671, 70 S. Ct. 876, 94 L. Ed. 1194 (1950); see also *Okpalobi v. Foster,* 244 F.3d 405, 434 (5th Cir. 2001) (en banc) ("[T]he Declaratory Judgment Act does not itself grant federal jurisdiction"). Therefore, as this Court's jurisdiction is based on diversity under 28 U.S.C. § 1332, Mississippi Law will be applied.

In the case at bar, the terms of the EMC Policy require coverage for sums that the insured "becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." The Policy states that the insurance applies to "bodily injury" and "property damage" only if the bodily injury or property damage is caused by an "occurrence." "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

The "Mississippi Supreme Court has found that the use of the term 'accident' in a CGL policy to define 'occurrence' is 'sufficiently unambiguous for [the court] to hold that the term accident refers to [the insured's action] and not whatever unintended damages flowed from that act.'" *W.R. Berkley Corp. v. Rea's Country Lane Const., Inc.*, 140 So. 3d 437, 443 (Miss. Ct. App. 2013); quoting *Allstate Ins. v. Moulton*, 464 So. 2d 507, 510 (Miss. 1985). The Court has further held that "an accident by its very nature produces unexpected and unintended results. It follows that bodily injury or property damage, expected or intended from the standpoint of the insured, cannot be the result of an accident. *Omnibank*, 812 So. 2d at 200. In further elaboration, the Mississippi Supreme Court has held that there *is* coverage unless the "chain of events leading to the injuries complained of were set in motion and followed a course consciously devised and controlled by [the insured] without the unexpected intervention of any third person or extrinsic force." *Architex Ass'n, Inc.*, 27 So. 3d at 1153–54 (emphasis omitted) (quoting *OmniBank*, 812 So. 2d at 200 (Miss. 2002).

EMC argues that because Littrell is alleged to have performed certain activities consciously and deliberately, his actions do not constitute an accident or occurrence. Further, EMC argues that the likely (and actual) result of these actions, being the failure and collapse of the deck, was well within Littrell's foresight and anticipation. Therefore, according to EMC, the

6

deck collapse was or should have been expected to occur, negating coverage. *See Architex Ass'n, Inc.*, 27 So. 3d at 1150 ("[o]nly when 'property damage' is proximately caused by an accident (an inadvertent act) does an 'occurrence,' as defined by the policy, trigger coverage").

Conversely, DLA heavily relies on *EMJ Corp. v. Hudson Specialty Ins. Co.*, 833 F.3d 544 (5th Cir. 2016) for the proposition that an intentional act taken without the intention of causing the complained of injury may be found as an occurrence. That case involved a general contractor, EMJ Corporation, who accepted the completed work of their subcontractor, Contract Steel. The insurers filed suit in district court seeking declaratory relief after an inspector fell from a faultily-installed ladder. In the underlying state suit at bar, the state court judge ruled that under Mississippi law, once a contractor accepts the work of a subcontractor, liability for injuries related to the work accepted shifts to the party accepting the work. Therefore, the only remaining defendant in the underlying suit was EMJ, the general contractor. Accordingly, the pertinent underlying act was the general contractor's acceptance of the subcontractor's work. The district court, and later the Fifth Circuit, held that EMJ did not intentionally devise or control a course of action leading to the damages incurred by merely accepting work negligently performed by a subcontractor.

The *EMJ* case and the case at bar are not analogous. This declaratory action concerns coverage for the subcontractor's alleged negligence and his purported intentional acts, specifically. Therefore, the actions of Littrell, as the subcontractor, remain pivotal to Court's inquiry—unlike *EMJ*, where the Court examined the general contractor's actions and coverage under the general contractor's policy.

In his deposition, Jason Littrell testified that the method he used to fasten the deck, using nails secured into oriented strand board, would not be an appropriate method of fastening a deck

7

used for live loads. Furthermore, he testified that he knew people would use the decks. Therefore, given Littrell's contemporaneous knowledge of his failure, it cannot be said that his actions constitute an accident. "While the notion of a 'failure' or 'omission' intuitively may seem less intentional than an overtly affirmative act, logic does not bear this out." *Acceptance Ins. Co. v. Powe Timber Co.*, 403 F. Supp. 2d 552, 556 (S.D. Miss. 2005), *aff'd*, 219 F. App'x 349 (5th Cir. 2007).

For these reasons, the Court concludes that the claims in the underlying lawsuits do not involve injury caused by an "occurrence" and hence do not create the potential for insurance coverage under the subject policies. The Court finds EMC's arguments that the West and Carley Complaints do not claim "bodily injury" or "property damage" caused by an "occurrence" as that term is defined in the Policy to be well taken. Accordingly, based on the allegations in the underlying actions, there is no duty to defend or indemnify under the policies for these claims.

Finally, DLA's indemnity claims are derivative of the underlying West complaint. Similarly, such claims do not involve damages caused by injury or damage caused by an "occurrence" as that term is defined in EMC's Policy.

*Conclusion*

As there are no remaining questions of material fact, EMC's Motions for Summary Judgment are GRANTED. Neither the West and Carley Complaints nor the DLA Cross-Complaint claim injury or damage caused by an "occurrence" as that term is defined in the Policy. Accordingly, there is no duty to defend or indemnify under the policies for these claims. As all other claims in this matter have been disposed, this case is CLOSED.

SO ORDERED this the 21st day of June, 2017.

/s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE